UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:21-cr-00022-GFVT-MAS-1 |
| v. | ) | |
| | ) | |
| REINALDO PACHECO, | ) | |
| | ) | |
| Defendant. | ) | |

**DETENTION OPINION & ORDER**

The Indictment alleges that Defendant Reinaldo Pacheco ("Pacheco") twice possessed firearms as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). [DE 1]. The United States orally moved for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E). [DE 8]. The Court conducted a detention hearing on December 6, 2021 and afforded both sides all procedural rights outlined in the Bail Reform Act ("BRA"). [DE 13]. The Government urged detention based on flight and danger risks, with its primary focus on the latter. Per Federal Rule of Appellate Procedure 9(a) and for the reasons discussed in this opinion, the Court finds by clear and convincing evidence that available conditions cannot reasonably assure community safety under the circumstances. The BRA thus requires Pacheco's pretrial detention in this case.

I.      **BRA FRAMEWORK**

Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention demands clear and convincing evidence that no combination of conditions will reasonably ensure

1

community safety.  18 U.S.C. § 3142(f).  The analyses are distinct.  Conditions that sufficiently target nonappearance risk may not adequately address danger potential.  *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001).  Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance.  *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context.  18 U.S.C. § 3142(f).  The key is simply evidentiary reliability and accuracy.  *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998).  Given detention hearing informality, the Court properly considers a wide range of proof.  The nature and quality of proof, however, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.[1]

---

[1] The subsection directs the Court to balance the following:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person, including--
    (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

## II.    ANALYSIS

The Court finds that, though Pacheco presents some flight and/or nonappearance risk, it could craft conditions to reasonably assure that he would not flee and that he would appear at future hearings.  However, the Court further finds, by clear and convincing evidence, that it cannot assemble adequate conditions to reasonably assure community safety in light of the serious risk of danger that Pacheco presents.  Pacheco thus must remain in custody pretrial based on danger risk.

### A.    RISK OF FLIGHT OR NONAPPEARANCE

#### 1.    Nature and Circumstances of the Offense

In considering whether Pacheco presents an unmitigable flight risk, the Court first assesses "the nature and circumstances of the offense charged, including whether the offense . . . involves a . . . firearm[.]"  18 U.S.C. § 3142(g)(1).  Though the alleged offenses involve unlawful firearm possession, the firearms in this case have no practical bearing on the flight analysis.  There are no other offense circumstances that particularly indicate a risk of flight or nonappearance, and the parties did not argue any.  This factor does not meaningfully favor detention.

#### 2.    Weight of Flight Evidence and Defendant's History and Characteristics

---

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. In considering the conditions of release described in subsection (c)(1)(B)(xi) or (c)(1)(B)(xii) of this section, the judicial officer may upon his own motion, or shall upon the motion of the Government, conduct an inquiry into the source of the property to be designated for potential forfeiture or offered as collateral to secure a bond, and shall decline to accept the designation, or the use as collateral, of property that, because of its source, will not reasonably assure the appearance of the person as required.

18 U.S.C. § 3142(g).

The second factor the Court must consider is the weight of the evidence that Pacheco is a risk of flight or nonappearance.  18 U.S.C. § 3143(g)(2).  *See United States v. Sykes*, No. 04-cr-80623, 453 F. Supp. 3d 1011, 1015–16 (E.D. Mich. Apr. 13, 2020) (citing *United States v. Stone*, 608 F.3d 939, 948 (6th Cir. 2010)) (noting that, in this Circuit, the § 3142(g)(2) factor looks only to the weight of the evidence that the defendant is a flight risk or a danger); *accord United States v. Sanders*, 466 F. Supp. 3d 779, 785 (E.D. Mich. 2020).  Because Pacheco's background largely supplies the facts relevant to the (g)(2) factor, the Court considers it in conjunction with the third and final flight factor, Pacheco's history and characteristics.[2]  *See* 18 U.S.C. § 3142(g)(3).  These factors collectively weigh in favor of finding some risk of nonappearance in this case.

There is certainly some evidence in Pacheco's background indicating that he may not appear for proceedings.  He has several prior failures to appear within the last five years.  [PSR at 4-5].  However, all are related to traffic offenses, as defense counsel emphasized.  *See, e.g.*, *United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) (acknowledging "that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment.").  Indeed, it appears that Pacheco has appeared on all proceedings for felony charges in the past, per the PSR.  Defense counsel further proffered that he believed Pacheco to have been unaware of certain traffic-related court dates due to COVID-19 mailing issues, in part resulting in the missed hearings.

Another aggravating factor in Pacheco's history as reflected in the PSR is his recent arrest for driving under the influence of alcohol or a controlled substance in Pennsylvania.  This recent

---

[2] The fourth BRA factor, the nature and seriousness of the danger risk presented, is conceptually discordant with the nonappearance risk analysis.

travel was unexplained at the hearing, particularly given Pacheco's state bond status at the time for 2018 drug offenses. [PSR at 4-5]. Together with the testimony from Bureau of Alcohol, Tobacco, and Firearms Agent Lizzy Brewer ("Agent Brewer") at the detention hearing, the record indicates that Pacheco may engage in criminal offense-related travel between Kentucky and New York at unknown intervals and for unknown durations. The testimony further suggested that Pacheco may have an (also unknown) array of criminal associates in New York, his original state of residence.

Agent Brewer testified that Pacheco is believed to have transported multiple firearms to New York that, ultimately, were directly involved in a shooting homicide in that state. She described footage of Pacheco from inside a local pawn shop engaged in a conversation (on his cell phone) discussing purchasing firearms in Kentucky, where they are more readily available, and bringing them to New York. Agent Brewer further indicated that Pacheco and his activities, as well as the related homicide, are suspected to be tied to gang activity. Considering Pacheco's New York criminal connections and his interstate travel in combination, there is some risk that he may be both incentivized (or pressured by gang associates) to avoid federal prosecution and equipped with the resources needed to evade detection and criminal responsibility.

Lastly, Defendant's current living situation presents some concern of instability—or, at least, inadequate monitoring or in-home supervision during any release term. Per the PSR, Pacheco would propose to continue living with his girlfriend of a decade, Cristina Colon ("Colon"), with whom he shares three children. The pair is originally from Bronx, New York but has lived in Frankfort for five years (and at the noted current residence for just over one year). [PSR at 1-2]. However, Colon is the subject of a related federal criminal case in this District, stemming from the same offense conduct here alleged. Colon pleaded guilty to two counts of

making false statements in the acquisition of firearms in violation of 18 U.S.C. § 922(a)(6) and, per the docket, is likely to be sentenced in early 2022.  *United States v. Cristina Colon*, No. 3:21-cr-00019-GFVT-MAS, at E.C.F. No. 9 (Sept. 29, 2021).

Per her plea agreement, *see* E.C.F. No. 9, and consistent with Agent Brewer's testimony at Pacheco's detention hearing, Colon admitted that she was engaging in straw purchases to supply Pacheco with firearms (as Pacheco was prohibited from purchasing or possessing them himself due to prior felony convictions).  The record confirms that surveillance footage captures several of the incriminating interactions between Colon and Pacheco at the pawn shops.  Though the parties did not address it at the hearing, these circumstances surely risk some volatility at the shared residence.  Colon is currently on release pending sentencing.  It is unclear how this would impact Pacheco's reliability and ability to travel to Court as needed.  Moreover, with Colon's overlapping convictions and the recent criminal scheme between the two, she would be unavailable as a custodian or for any meaningful supervision purposes if Pacheco were released.  Finally, Pacheco does not have consistent prior or current employment, though he has been caring for the couple's children since February of 2021 and thus has not been able to work outside of the home.  [PSR at 2].  All of these facts indicate some risk of nonappearance, and the second and third BRA factors thus weigh slightly in favor of detention based on flight.

### 3.    <u>Availability of Flight Conditions</u>

On balance, though Pacheco presents several, varied nonappearance indicators as thoroughly described above, each is relatively speculative, with little concrete proof in either direction.  The Government, of course, ultimately bears the evidentiary burden.  Pacheco's three children at least somewhat anchor him to this area and may motivate compliance with conditions.  And, most critically, the PSR confirms that Pacheco has not had any documented failures to appear

6

in relation to prior felony charges in the Frankfort area. For these reasons, the Court believes that it could craft conditions to reasonably assure that Pacheco would appear for further proceedings in this case. With Pacheco's consistent address, the Court could impose GPS monitoring and home detention. The Court would further require Pacheco either to continue being the primary caretaker for his children or, if unoccupied at any time, to obtain and maintain employment. Given the availability of strict location-restriction and monitoring conditions and Defendant's current ties to the area, the Court cannot conclude by a preponderance of the evidence that it could not establish conditions to reasonably assure Pacheco's appearance. *See United States v. Chen*, 820 F. Supp. 1205, 1208 (N.D. Cal. 1992) (emphasizing that opportunity to flee is not enough and that the BRA "does not seek ironclad guarantees" against flight or nonappearance).

The Court thus finds detention based upon flight unwarranted.

**B.    RISK OF DANGER**

**1.    Nature and Circumstances of the Offense**

The nature and circumstances of the firearm possession offenses charged in this case signal serious danger risk. *See* 18 U.S.C. § 3142(g)(1). As Colon admitted in her parallel guilty plea and as Agent Brewer testified, in July 2020, Colon purchased a specific firearm (hereinafter the "SCCY") from a Frankfort pawn shop on behalf of Pacheco, knowing Pacheco could not purchase the firearm himself due to his felon status; video surveillance shows both Colon's purchase of the SCCY and her handing it to Pacheco after the purchase, who handled gun. In August 2020, Pacheco browsed firearms in a local pawn shop and, per footage, displayed certain weapons to a friend via FaceTime; shortly after, Colon entered the shop and attempted to purchase two firearms. Agent Brewer testified that, on the video call, Pacheco discussed the ease of obtaining firearms in Kentucky and suggested bringing them to New York, where it was more difficult to obtain a gun.

This transaction ultimately was delayed due to the suspicious activity and Colon never received the firearms. Colon also purchased several other firearms from Frankfort pawn shops in the spring and summer of 2020. When law enforcement asked her to produce them, however, she was unable to locate the firearms.

The orchestrated deception underlying the instant firearm possession offenses is particularly concerning in terms of likely compliance with any danger conditions. Pacheco has already demonstrated inclination and ability, at least in the short-term, to circumvent firearms laws. Additionally, the specter of interstate firearm trade, again aimed specifically at sidestepping firearms laws, is further aggravating and establishes a grave danger concern. Perhaps most concerning is that the SCCY, as traced back to Colon's purchase via a gun box discovered during a state search warrant execution, is linked (and believed to have been used) in the homicide shooting. All of these elements highlight the significant risk that Pacheco will pose an exceptionally grave, and perhaps deadly, to his community of release. This factor thus heavily weighs in favor of detention based on danger risk.

### 2. Weight of Danger Evidence

As noted, this factor considers only the weight of dangerousness evidence, not the weight of the evidence of Pacheco's guilt. 18 U.S.C. § 3142(g)(2); *Stone*, 608 F.3d at 948. The Court does not make any pretrial assessment of the Government's proof on the substantive offense elements. However, given the credible evidence presented at the detention hearing concerning Pacheco's conduct in this offense and the surrounding scheme with Colon, as well as the PSR's reflection of Pacheco's criminal history, there is weighty evidence of Pacheco's dangerousness. Analysis of this factor thus combines and tracks the Court's discussion of the first factor, *supra*, and the third factor, *infra*. For the reasons there outlined, the offense circumstances (*i.e.*, the straw

8

purchase of multiple guns in Kentucky for the purpose of disseminating them in New York, where they were directly connected to a likely gang-related homicide) and Pacheco's history and characteristics (namely, the violence present in his juvenile criminal record, his prior state drug trafficking conviction, and the fact that he was on bond for the trafficking offenses at the time of the instant alleged offenses) collectively provide substantial evidence that Pacheco is dangerous and that he may not abide by even strict release conditions.  For these reasons and the reasons stated in the Court's discussion of the first and third factors, the second BRA factor thus weighs in favor of Defendant's pretrial detention.

### 3.      **Defendant's History and Characteristics**

The third factor considers Defendant's history and characteristics, to include *inter alia* the person's character, past conduct and criminal record, and family and community ties.  Little is known, overall, about Pacheco's character beyond his allegedly fraudulent acquisition of the firearms in this case and his scheme with Colon.  Pacheco represented to the Probation Office that he cares for his young children currently, which facially reflects positively, but few details are present on this record about his relationship with or care of his children.  Additionally, Pacheco has a spotty employment history, that contains some encouraging past work but at the same time demonstrates inconsistent occupation.  Beyond these relatively neutral facts, the record contains little information about Pacheco's other family and community ties and involvement.

Pacheco's criminal history, on the other hand, is concerning and tilts this factor firmly in favor of danger-based detention.  The PSR includes several violent juvenile offenses in Pacheco's background; in 2013 and 2014, when Defendant was 16 and 17 years old, he was convicted of burglary, criminal mischief, obstruction of governmental administration, and assault with intent to cause physical injury in New York.  [PSR at 3-4].  This early string of convictions in Pacheco's

9

history suggests an entrenched involvement in criminal activity.   At age 21, in Frankfort, Pacheco was convicted of enhanced trafficking in marijuana and related offenses.   [*Id.* at 4].   Given a prior drug-related charge as a juvenile, the conviction indicates escalating involvement in drug activity. Pacheco ultimately was sentenced to five years' probation and was serving that term when he allegedly committed the instant weapons possession offenses.   This chronology suggests risk that Pacheco is undeterred by consequences and may not comply with conditions and is particularly aggravating under the BRA framework.   *See* 18 U.S.C. § 3142(g)(3)(B) (considering "whether, at the time of the current offense or arrest, the person was on probation" for a different offense). Pacheco's Pennsylvania charge for driving under the influence, that also occurred while he was under conditional release, is likewise concerning.

For these reasons, based on Pacheco's past offenses (that reflect some tendency toward violence) and recent criminal conduct while on state pretrial release for the 2018 drug trafficking convictions, the third factor weighs in favor of detention based upon danger risk.

### 4.   <u>Nature and Seriousness of the Danger Risk</u>

The fourth and final factor evaluates "the nature and seriousness of the danger to any person or the community that would be posed by the person's release[.]"  18 U.S.C. § 3142(g)(4).   The circumstances, as established by Agent Brewer at the detention hearing, surrounding Pacheco's possession of the SCCY and its ultimate tie to the New York homicide illustrate the exceptionally serious danger risk that exists in this case.   There is credible evidence that the instant offenses were committed in order to funnel guns to New York for unknown purposes.   Agent Brewer testified that the New York investigators believed that individuals were handing out firearms to others involved in the shooting, including the later-identified SCCY traced to Pacheco.   She further testified that investigators believe the activity and shooting to be gang-activity-related.

10

Though the details of Pacheco's New York and/or gang connections and his personal role in the homicide investigation are unclear, the known information is aggravating and depicts Pacheco as an individual capable of facilitating great violence.  No innocent explanation for the chain of events surrounding the SCCY was offered, and the current proof of record indicates that Pacheco intended to supply firearms to individuals in New York for the purpose of engaging in violent criminal activity and that he devised a fraudulent scheme to obtain the guns in Kentucky through Colon as a predicate step.  Also concerning is the fact that neither Colon nor investigators, despite searching, were able to locate the firearms that evidence indicates (and Colon has admitted) were straw purchases on behalf of Pacheco.  It is likely that those guns remain in circulation in some capacity and may be available still to Pacheco or his associates either in Kentucky or New York.  Lastly, compounding the concern related to Pacheco's firearm possession is his recent prior drug trafficking conviction (for which he was on bond at the time of these offenses).  *See, e.g.*, *United States v. Ingram*, 415 F. Supp. 3d 1072, 1085 (N.D. Fla. 2019) (quoting *United States v. Harris*, 128 F.3d 850, 852 (4th Cir. 1997)) (observing generally that "guns and drugs form a lethal combination that can lead to violence" and finding detention warranted based in part on the recovery of multiple firearms at the defendant's personal residence).

For these reasons, and given the homicide death that has already resulted from conduct connected to Pacheco and the instant charged offenses, this factor weighs strongly in favor of detaining Pacheco based on serious danger risk.

### 5. <u>Availability of Danger Conditions</u>

All of the BRA factors favor a finding of dangerousness in this case.  Nor, under the circumstances, can even the most restrictive of conditions (to include home detention and/or locational monitoring) reasonably assure community safety.  The Court hesitates, from a

11

community safety perspective, to release Pacheco to the residence where he stored several (yet unlocated) fraudulently obtained firearms and lives with his co-conspirator in the offense, whom is awaiting federal sentencing herself after conceding the criminal allegations and unequivocally implicating Pacheco in the offenses. Further, residential volatility aside, it is apparent that Pacheco has persisting criminal connections to New York, in light of his FaceTime call about sending firearms to that state and the presence of the SCCY traced to him at the site of the New York homicide search warrant. Nor is any custodian evidently available to monitor Pacheco and aid in ensuring compliance with any conditions.

On the whole, both the details of Pacheco's present living situation and the full scope of his interstate criminal activity and connections are relatively opaque, preventing the Court from confidently concluding that it can impose parameters to adequately protect the community. Accordingly, the Court concludes that the Government has shown, by clear and convincing evidence, that no combination of available conditions can reasonably assure community safety in light of the serious danger risk in this case.

### III.   <u>CONCLUSION</u>

For the reasons thoroughly discussed, the Court finds that, though Pacheco presents some flight risk, it could craft conditions to adequately target the particular concerns and reasonably assure that Pacheco would appear as directed for future proceedings in this case. However, the Court does find by clear and convincing evidence that no combination of conditions can reasonably assure community safety. Detention based on danger risk is thus warranted under the BRA and Defendant shall remain in custody pending trial in this matter.

Accordingly, the Court **GRANTS** the United States' oral detention motion. The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Entered this the 17th day of December, 2021.



Signed By:
Matthew A. Stinnett
United States Magistrate Judge